**Sharon Kay ADAMS, Petitioner–Appellee,**

v.

**Kenneth Dwight REED, Respondent–Appellant.**

Court of Appeals of Tennessee,
Eastern Section.

Nov. 19, 1993.

Application for Permission to Appeal
Denied by Supreme Court
April 4, 1994.

Sarah Y. Sheppeard, Knoxville, for appellant.

D. Dwaine Evans, Morristown, for appellee.

## OPINION

SANDERS, Presiding Judge (Eastern Section).

The Respondent has appealed from the award of child support in a paternity case, saying the evidence rebutted the presumption of the child support guidelines as the basis for fixing child support.

For some time prior to August, 1991, the Petitioner–Appellee, Sharon Adams, and Respondent–Appellant Kenneth Reed were both employed as couriers by Federal Express in Morristown. During that period of time a romantic relationship developed between them. The affair was terminated by Mr. Reed and he became reconciled with Elaine, his wife of 12 years. To increase the distance between them and to avoid further contact with Ms. Adams, Mr. Reed received a transfer with Federal Express to Knoxville where he now lives with Elaine and his two minor children, Beth and Kenny.

Sometime after the relationship between Ms. Adams and Mr. Reed had been terminated, Ms. Adams discovered she was pregnant. In August, 1991, Petitioner gave birth to her daughter, Natalie. Soon after Natalie was born, Petitioner filed a paternity suit against Respondent alleging he was the father of Natalie. In her petition she asked the court to (a) find Mr. Reed was the father of Natalie; (b) order him to pay reasonable child support, to provide health insurance for the child, and to pay medical and dental expenses not covered by insurance.

After blood tests established a 99.97% probability Mr. Reed was the child's father, the parties stipulated paternity. At the beginning of the trial the parties informed the court they had agreed on the following matters: "(1) [T]he defendant is the father of the minor child, Natalie, (2) ... [T]he defendant owes an obligation of support to [the] child; (3) ... [T]he ... mother should have custody of the child, (4) ... [T]he defendant ... is not seeking any ... visitation with the child ...; (5) ... [T]he defendant will pay one half (½) of the medical expenses related to the child's birth ... being Five Hundred Ninety Two and 08/100 Dollars ($592.08), (6) ... [T]he defendant will be responsible for maintaining the child's medical insurance in the future; (7) ... [T]he parties will split equally any reasonable and necessary medical and dental expenses not covered by insurance; and (8) ... [A]ny child support ordered by the court will be paid into the mother's credit union account by direct deposit." At trial, the Respondent contested attorneys' fees and the amount of past and future child support.

The evidence showed Mr. Reed and Ms. Adams earn very close to the same income because they both work for Federal Express as couriers. Mr. Reed earns slightly more per hour ($13.28) than does Ms. Adams ($12.78) because his delivery route is in Knoxville and hers is in Morristown. Both earn varying amounts of overtime pay. The trial court found Mr. Reed's average monthly net pay to be $2,152. It appears Ms.

Adams's average monthly net income is $2,227.91.

At the end of the trial, the court ordered Mr. Reed to pay $420.44 per month for future child support and $6,780 in child support accrued during the 15 months between the child's birth and the trial, to be paid at the rate of $100 per month. The court also held Mr. Reed responsible for some of Natalie's past and future medical and dental care.

Mr. Reed has appealed as to the court's applying the child support guidelines and fixing his child support at 21% of his net income, being $420.44 per month. He presents the following issues for review: "Whether the trial court erred and abused its discretion in finding that the presumption attendant to the child support guidelines has not been rebutted where both parents have essentially identical incomes, the recipient of support has only herself and the child to support, and the payor is the sole source of support for not only himself, but also two older children and a wife, all of whom were his dependents before the birth of this child"; and "Whether the trial court erred and abused its discretion in applying the guidelines percentage for one child to a father with two pre-existing children, both of whom also require his support."

■ We find there is merit in the Appellant's issues, and modify the order of the court for the reasons hereinafter stated. T.C.A. § 36–5–101(e)(1) provides:

In making its determination concerning the amount of support of any minor child or children of the parties, the court shall apply as a rebuttable presumption the child support guidelines as provided in this subsection. If the court finds that evidence is sufficient to rebut this presumption, the court shall make a written finding that the application of the child support guidelines would be unjust or inappropriate in that particular case, in order to provide for the best interest of the child(ren) or the equity between the parties.

Tennessee Child Support Guidelines, Section 1240-2-4-.03(4) and (5), as pertinent here, provide:

(4) Net income is calculated by subtracting from gross income of the obligor FICA ... the amount of withholding tax deducted for a single wage earner claiming one deduction ... and the amount of child support actually being paid pursuant to a previous order of child support for other children. This amount shall be calculated on a monthly basis, but payment may be ordered to be weekly or biweekly.

(5) After determining the net income of the obligor, that amount is to be rounded up to the next dollar. That amount is then multiplied by the percentage below that corresponds *to the number of children to be supported.* The percentages are: (Emphasis ours.)

| # of children | 1 | 2 | 3 | 4 | 5 or more |
|---|---|---|---|---|---|
| % of income | 21% | 32% | 41% | 46% | 50% |

It will be observed the guidelines of this state make no provision for other dependent children which a debtor is supporting, except "child support actually being paid pursuant to a previous order of child support for other children." We can see the rationale for not providing for a deduction for other dependent children which a debtor is not actually supporting but we fail to see any rationale for excluding other dependent children which a debtor is actually supporting just because he is not under a "previous order of child support."

In our review of statutes in seven other states, we found that all but one recognize the support of other dependent children in setting guidelines for support without reference to previous support orders. The statute in Florida provides: "Allowable deductions from gross income shall include: ... (f) court-ordered support for other children which is actually paid." The statute of Georgia includes in the factors to be considered in its guidelines: "(6) A party's other support obligations to another household." The statutes of the states of Mississippi, Missouri, Illinois, and Texas are of like import.

■ We find the child support guidelines of this jurisdiction to be woefully lacking in failing to recognize the legal obligations of a parent in this jurisdiction to support a minor child, even though he is under no court order to do so. This obligation has long been

recognized in this jurisdiction and is codified in our statutes. It is not only a legal duty under our civil statutes to support one's minor children, but failure to do so is declared by our legislature to be a criminal offense. Sec. 34–11–102(a) (Supp.1993) provides: "Parents are the joint natural guardians of their natural children, and are equally and jointly charged with their care, nurture, welfare, education and support...." Sec. 39–15–101(a) (1991) provides: "A person commits the crime of nonsupport who fails to provide support which that person is able to provide and knows he has a duty to provide to a minor child...." The guidelines were adopted as an aid to the courts when the courts are called upon to fix the amount of child support a parent should pay under his legal duty to support a child.

In our determination of the issues before us, the one question we are unable to find a logical answer to is why a parent must be under a previous court order to support the children in his household before they can be taken into consideration in fixing the amount he or she shall pay for the support of a third child.

The Appellant suggests in his brief that he and his wife could have gotten a divorce along with a child support order while the paternity case was pending, which would have permitted consideration of those children in fixing his child support in the case at bar.

Another factor which deserves consideration in determining whether the application of the guidelines is unjust and inappropriate in the case at bar is the relative income of the parties and the relative needs of the two households of the parties. In his brief, the Appellant states: "Because the parties make essentially the same income, the inequity in the court's application of the guidelines is easy to comprehend. Ms. Adams has one hundred percent of her net income, plus twenty-one per cent of Mr. Reed's, to support her household of two. In contrast to her one hundred twenty-one percent, Mr. Reed has the remaining seventy-nine percent of his net pay to support a household of four. On a per capita basis, each member of his household has the benefit of 19.75 percent of a Federal Express courier's salary, while each member of her household has the benefit of 60.5 per cent of the same courier's salary. This is three times as much per household member."

Also to be considered is Sec. 1240–2–4–.03(2) of the guidelines which presumes "that the obligee [Ms. Adams] will be expending at least an equal percentage of net income for the support of children [for] whom support is sought." At trial Ms. Adams estimated Natalie's cost of support to be $642.28 per month. Under the trial court's order, Mr. Reed is paying $420.44 per month toward these expenses, all but $221.84 of the total Natalie requires. We can deduce Ms. Adams need only pick up Natalie's remaining expenses of $221.84. This figure equals only 9.95% of her net income of $2,227.91 per month, which is far below the basic presumption required under 1240–2–4–.03(2) of the guidelines.

The Appellee cites the unreported case of *Wilson v. Wilson,* filed in Nashville May 22, 1991, as supportive of her position. We cannot agree, as the *Wilson* case is distinguishable from the case at bar. In *Wilson,* Mr. and Mrs. Wilson were divorced in 1980. They had two children for whom Mr. Wilson was ordered to pay $200 per month child support. Approximately two and one-half years later, Mr. Wilson married a woman who had three sons by her previous marriage. Mr. Wilson adopted his wife's three sons and later he and his wife had a child born to their marriage. Several years later, Mr. Wilson's first wife filed a petition to have the child support increased. The chancellor increased the child support from $200 to $530 per month. The wife appealed, saying the chancellor abused his discretion by not applying the child support guidelines. At the time of the trial, two of Mr. Wilson's adopted sons had reached their majority but one of the sons who had reached his majority was still living in the household. Mr. Wilson took the position his support payments should be based on five dependent children—the two by his first wife, the one by his second wife, the minor adopted son, and the adopted son who was an adult but still living in his household. In fixing the amount of support, the

chancellor figured the amount of support Mr. Wilson would be required to pay for five children and awarded the first wife two-fifths of that amount, which was $530 per month. On appeal, this court reversed, holding the presumption in favor of the guidelines had not been rebutted. There are a number of material facts in the *Wilson* case which distinguish it from the case at bar. We think the chancellor in the *Wilson* case was in error in considering the adult adopted son as a dependent child, even though he was still living in the father's household. In its consideration of the case on appeal, the court gave consideration to the fact that Mr. Wilson had the obligation to support the two children by his first wife before he voluntarily took on the responsibility of additional children. In addressing this issue, the *Wilson* court said:

> Under common law, children of a subsequent marriage, whether adopted, natural born or step children, were considered to be a voluntary and foreseen circumstance and the obligation to support them was not considered in determining a modification of child support. One case often relied upon for this premise is *Dillow v. Dillow*, 575 S.W.2d 289 (Tenn.App.1978). In *Dillow*, the father remarried a woman with two children and sought a reduction in child support payments to his former wife on the basis of his new obligation to his immediate family. The court held that "obligations voluntarily assumed are not proper to be considered as changed circumstances to reduce support payments otherwise owed." *Id.* at 291.

*Wilson* at 4–5.

Mr. Reed's duty to support his two children, Beth and Kenny, was his legal obligation several years before Natalie was born.

Another very distinguishing factor in the case at bar and the *Wilson* case is the apparent lack of proof in the *Wilson* case as to what was the relative expense of maintaining the separate households. In its reversal of the *Wilson* case, the court said: "[T]he courts may consider a parent's obligation to the natural or adopted children of his or her immediate family if such evidence is presented to rebut the presumption that the amount provided by the Guidelines is the appropriate child support award. We find no evidence presented regarding what percentage of the father's income is necessary to support his subsequent children. Therefore, the presumption is not rebutted and the evidence preponderates against the trial court's award of $530 per month in child support."

In the case at bar, the evidence established the income of the two households is almost equal. The proof also established the inequities that would result to Mr. Reed's first two children, Beth and Kenny, if the guidelines were strictly followed.

Under the facts in the case at bar, we find the evidence is sufficient to rebut the presumption in favor of the guidelines. We find it would be unjust and inappropriate in this particular case to give preferential treatment to one over the other two children whom Mr. Reed is under a duty to support. We, accordingly, modify the judgment to conform to the amount of support which the guidelines would provide for had Mr. Reed been under a previous order to support Beth and Kenny. With a net income of $2,152, Mr. Reed would have been required to pay 32%, or $688.64 of that amount, for the support of two children. Deducting $688.64 from $2,152 leaves a balance of $1,463.36 and 21% of that amount is $307.31 which is the amount Mr. Reed will be required to pay per month for the support of Natalie.

To the extent the judgment is not modified, it is affirmed. The cost of this appeal is taxed one-half to the Appellant and one-half to the Appellee and the case is remanded to the trial court for the entry of a judgment in keeping with this opinion.

FRANKS and McMURRAY, JJ., concur.

FRANKS, Judge, concurring.

I agree with Judge Sanders' result. However, we cannot amend a statute by judicial decree, which is essentially what the Court does in this case.

The courts all too often, in my view, ignore the legislative caveat that the child support guidelines are merely presumed to establish

the correct amount of support and are always subject to be rebutted.

In this case the presumption of correctness is clearly rebutted by the evidence.