IN RE: )
    JASON RYAN STEPHENS )
     )
PAMELA RENEE STEPHENS )
     )
    Petitioner/Appellant, ) Appeal No.
     ) 01-A-01-9801-JV-00043
v. )
     ) Rutherford Juvenile
JAMES CALLAWAY, ) No. 9600
     )
    Respondent/Appellee. )

**FILED**

**July 1, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

COURT OF APPEALS OF TENNESSEE

APPEAL FROM THE JUVENILE COURT FOR RUTHERFORD COUNTY

AT MURFREESBORO, TENNESSEE

THE HONORABLE DAVID LOUGHRY, JUDGE

PETER V. HALL
8 Lincoln Square
1535 West Northfield Boulevard
Murfreesboro, Tennessee  37129
    ATTORNEY FOR PETITIONER/APPELLANT

W. KENT COLEMAN
14 Public Square North
Murfreesboro, Tennessee  37130
    ATTORNEY FOR RESPONDENT/APPELLEE

REVERSED AND REMANDED

WILLIAM B. CAIN, JUDGE

# OPINION

This appeal involves a biological father's obligation to support his thirteen year old son.

Appellant Pamela Renee Stephens is the mother of Jason Ryan Stephens age thirteen years and appellee James Callaway is the natural father of Jason Ryan Stephens.

At the time Ryan was born Mr. Callaway was married to Anita M. Callaway and they had one minor child. Subsequent to the birth of Ryan, James and Anita Callaway had three additional children and at the time of the trial court proceedings which are the subject of this appeal, James and Anita Callaway and their four children were living together at Saint Simons Island, Georgia where Mr. Callaway was employed as Human Resource Manager for Rich-Seapak, a manufacturer of frozen foods.

Following a blood test in August of 1987 the Juvenile Court of Rutherford County, Tennessee ordered Mr. Callaway to pay child support to Ms. Stephens in the amount of $60.00 per week plus half of the medical expenses incurred on behalf of Ryan. At the time of this August 1987 order Mr. Callaway's annual income was approximately $35,000.00.

In the ensuing years Mr. Callaway increased his support payments without the necessity of a court order to the point that at the time of the hearing in the trial court of October 22, 1997 he was paying $460.00 per month, together with half of Ryan's medical expenses.

On June 10, 1997, appellant filed a petition seeking an increase in child support asserting a change in circumstances. This petition was answered by the appellee on July 21, 1997 and trial of the issues on October 2, 1997 resulted in a judgment of the juvenile court of October 22, 1997 holding, in part, as follows:

> . . . That the amount of child support to be paid by the respondent should be based upon the guidelines promulgated

by the Department of Human Services, which amount this court finds to be $460.00 per month; that the respondent fails to exercise visitation with the minor child thereby justifying an upwards deviation from the child support guidelines in the amount of $40.00 for total child support of $500.00. . .

Thus the trial court set future child support at $500.00 per month and awarded $1,200.00 in attorney's fees to counsel for appellant.

From this judgment appellant filed her notice of appeal on October 31, 1997.

The proof at trial established the gross income for Mr. Callaway in calendar year 1995 to be $64,029.44 with his 1996 gross income being $62,973.33. His earnings for 1997 through September 21 were $50,941.77.

Based upon all of the evidence the trial court found Mr. Callaway's annual income to be $67,680.00 gross and there is little room for serious dispute in the record about this amount of gross income.

While the final order of October 22, 1997 recites correctly that the Tennessee Department of Human Services Child Support Guidelines were applicable the trial judge undertook to take into consideration the obligations of Mr. Callaway to his four children living in his household with his wife Anita. In making this determination the trial court observed:

> There is a court authority throughout the State of Tennessee that says I am just supposed to give you 21% of his net income, and there is an authority for that.
> I personally don't believe in that. He's got a family to support. Other than this child, he's got four other children; and I think all children are just as important as the other.

This statement by the trial court is in conformity with *Adams v. Reed*, 874 S.W.2d 61 (Tenn.App.1993).

It is noted that *Adams v. Reed* was decided by the Eastern Section of

the Court of Appeals on November 19, 1993, and an application for permission to appeal was denied by the supreme court on April 4, 1994.

On September 29, 1994, the Department of Human Services Guidelines for Child Support were amended with an effective date of December 14, 1994. The effect of this amendment is discussed by this court at length in *Kirchner v. Pritchett*, 1995 WL 714279 issued December 6, 1995. It is noted that *Kirchner v. Pritchett* also involved an appeal from the Juvenile Court of Rutherford County.

In construing the December 14, 1994 amendment to the guidelines this court said:

> **5 The recent changes in the guidelines affect several of the issues involved in this case. The parties and the juvenile court should recognize that they will affect the amount of Mr. Pritchett's child support obligation in the following particulars:
>
> 1.   Mr. Pritchett has the burden of proving his income and expenses. If the juvenile court finds that his proof is unreliable, it shall presume that his gross income is $25,761 in accordance with Tenn. Comp. R. & Regs. r. 1240-2-4-.03(3)(e).
>
> 2.   The guidelines presume that the noncustodial parent is paying the required federal, state, and local taxes. *See* Tenn. Comp. R. & Regs. r. 1240-2-4-.03(4). thus, the amount of Mr. Pritchett's child support should be based on the presumption that he has or will pay the appropriate taxes, and the fact that he has not paid federal income taxes should not affect the amount of his child support obligation.
>
> 3.   Mr. Pritchett may not deduct payments for the support of his other children unless these payments are being made pursuant to a court order. *See* Tenn. Comp. R. & Regs. r. 1240-2-4-.03(4). (FN5)
>
> 4.   Mr. Pritchett cannot request the juvenile court to deviate from the guidelines solely because he is supporting other children unless he can demonstrate an extreme economic hardship. *See* Tenn. Comp. R. & regs. r. 1240-2-4-.03(4).
>
> 5.   The amount of Mr. Pritchett's child support should

-4-

be increased if he is not providing medical insurance for his son. *See* Tenn. Comp. R. & Regs. r. 1240-2-4-.04(1)(a).

6. The amount of Mr. Pritchett's child support should be increased if he is not exercising the visitation contemplated by the guidelines. *See* Tenn. Comp. R. & Regs. r. 1240-2-4-.04(1)(b).

***Kirchner v. Pritchett***, 1995 WL 714279 (Tenn.App.1995).

The trial court thus takes issue with the guidelines' requirements that Mr. Callaway may not deduct payments for the support of his children other than Ryan unless such payments are made under a court order and further can not request deviation from the guidelines solely because he is supporting other children unless he can demonstrate an extreme economic hardship. The same trial court found in the hearing below that no such extreme economic hardship existed.

Addressing this same problem in footnote the ***Kirchner*** court observed:

FN5. After criticizing the October 1989 version of the guidelines for not recognizing a parent's obligation to support children in the absence of a court order, another panel of this court held that voluntary child support should be considered in setting child support. *Adams v. Reed*, 874 S.W.2d 61, 63-65 (Tenn.Ct.App.1993). The Department of Human Services amended the guidelines after the *Adams v. Reed* decision. Rather than giving parents credit for voluntary child support payments, the amended guidelines specifically state that voluntary child support cannot be deducted from gross income and cannot be used as a basis for deviating from the guidelines unless the payments involve extreme economic hardship. Tenn. Comp. R. & Regs. r. 1240-2-4-.03(4).

1240-2-4-.0-3(4); ***Kirchner v. Pritchett***, 1995 WL 714279 (Tenn.App.1995).

However strongly the trial court or an appellate court may disagree with the guidelines the legislative mandate is clear and courts have no choice but to apply the guidelines when the court finds no legitimate basis for deviating therefrom.

> Child support in Tennessee is statutorily governed by T.C.A. § 36-5-101. Section 36-5-101(e)(1) provides that "[i]n making its determination concerning the amount of support of any minor child . . . of the parties, the court shall apply as a rebuttable presumption the child support guidelines as provided in this subsection." The General Assembly adopted the child support guidelines promulgated by the Tennessee Department of Human Services in order to maintain compliance with the Family Support Act of 1988, codified in various sections of 42 U.S.C. While they add a measure of consistency to child support awards statewide, the guidelines provide more than simple percentages to be applied against the net incomes of non-custodial parents. They also embody "the rules promulgated by the Department of Human Services in compliance with [the] requirements [of the Family Support Act of 1988]." Hence, the purposes, premises, guidelines for compliance, and criteria for deviation from the guidelines carry what amounts to a legislative mandate.

*Nash v. Mulle*, 846 S.W.2d 803, 804 (Tenn.1993).

The guidelines providing no explicit requirement as to the amount to be awarded in upward deviation because of the failure of Mr. Callaway to maintain regular visitation with Ryan this court will not disturb the finding of the trial court in this respect.

The judgment of the trial court is reversed and the case remanded to the Juvenile Court of Rutherford County, Tennessee with directions to fix the child support obligation of Mr. Callaway in conformity with the child support guidelines as amended on December 14, 1994.

Costs of this cause are assessed against the appellee.

_____
WILLIAM B. CAIN, JUDGE

CONCUR:

_____

HENRY F. TODD, PRESIDING JUDGE


_____

BEN H. CANTRELL, JUDGE