**IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON**

| | | |
|---|---|---|
| | | **FILED** |

**December 18, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **STATE OF TENNESSEE ex rel.,** | ) | |
| **LEANNA AVERY,** | ) | |
| | ) | |
| Petitioner/Appellant , | ) **Obion Circuit No. 7780** | |
| | ) | |
| VS. | ) **Appeal No. 02A01-9805-CV-00123** | |
| | ) | |
| **ROGER LEWIS** | ) | |
| | ) | |
| Respondent/Appellee. | ) | |

| | | |
|---|---|---|
| **STATE OF TENNESSEE ex rel.,** | ) | |
| **NATALIE THOMAS,** | ) | |
| | ) | |
| Petitioner/Appellant, | ) **Obion Circuit No. 5518** | |
| | ) | |
| VS. | ) **Appeal No. 02A01-9805-CV-00125** | |
| | ) | |
| **ROGER LEWIS,** | ) | |
| | ) | |
| Respondent/Appellee. | ) | |

APPEAL FROM THE CIRCUIT COURT OF OBION COUNTY
AT UNION CITY, TENNESSEE
THE HONORABLE WILLIAM B. ACREE, JR., JUDGE

**JOHN KNOX WALKUP**
**Attorney General and Reporter**
**SUE A. SHELDON**
**Assistant Attorney General**
Nashville, Tennessee
Attorney for Appellants

**ROGER LEWIS, pro se**
Union City, Tennessee

**REVERSED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**DAVID R. FARMER, J.**

**HOLLY KIRBY LILLARD, J.**

This case stems from the consolidation of two separate appeals from two separate

actions against Roger Lewis (Lewis). Each case involved a modification in child support obligations, from which the State of Tennessee (the State) appeals. The first case pertains to the support of Kendall Thomas (Kendall), who is the minor child of Lewis and Natalie Thomas. The second case pertains to the support of Victoria Avery (Victoria), who is the minor child of Lewis and Leanna Avery. For the reasons stated hereafter, we reverse the trial court's modification of child support to the amount of $40.00 per week each for Kendall and Victoria and establish such support at $79.82 per week for Kendall and at $77.73 per week for Victoria.

**Facts and Procedural History**

Both cases from which Lewis has appealed were originally commenced pursuant to Uniform Reciprocal Enforcement of Support Act transmittal orders.[1] In the Thomas case, the trial court entered a consent order on April 29, 1986, establishing that Lewis owes a duty of support to Kendall and requiring Lewis to pay $10.00 per week as child support for Kendall. In the Avery case, the trial court entered an order on February 20, 1991, establishing Lewis's paternity of Victoria and requiring Lewis to pay $25.00 per week as child support for Victoria. On March 14, 1997, the State filed petitions in both cases, seeking to modify and increase the amount of child support that Lewis was paying for each child. In both cases, the State asserted that a significant variance existed between Tennessee's child support guidelines and the amount of child support that was previously ordered.

The trial court heard arguments on both petitions to modify on July 25, 1997, during which evidence was presented establishing the following:

> 1. The Respondent's income is $2354.00 gross per month, or $543.27 per week.
> 2. The Respondent pays support on one prior court ordered obligation in the amount of $54.00 per week through Madison County, TN, and should be given credit for this obligation.

---

1. The Uniform Reciprocal Enforcement of Support Act, which was formerly codified as Tennessee Code Annotated sections 36-5-201 through 36-5-229, has since been repealed and substantially replaced by the Uniform Interstate Family Support Act, which is codified as sections 36-5-2001 through 36-5-2902 and became effective on June 23, 1997.

3. The Respondent pays support through court order on [two] other separate cases: Mattie Pirtle v. Roger Lewis, Juvenile Obion Docket No. 1419, [and] Martha McCampbell v. Roger Lewis, Juvenile Obion Docket No. 2209 . . . .

At the July 1997 hearing, the trial court orally stated "[t]hat it would be unjust or inappropriate to strictly apply the guidelines in this matter to require the Respondent to pay more than one-half of his weekly income on his court ordered support obligations as he has other non-court ordered obligations that place him in extreme economic hardship." The trial court then directed the parties to meet on July 28, 1997 to attempt to reach a consent order based upon this finding and the above facts. After Lewis failed to appear for the meeting, the matter again was brought before the trial court on September 26, 1997 and on February 27, 1998 for further argument. At the final hearing on February 27, 1998, the following transpired:

[Lewis] produced a paycheck stub and asked the Court to consider all of his children, including the one in Madison county and one he was paying support on without a court order directing him to do so, in setting the new amount of his child support obligations. He stated only that he was unable to pay more than one-half of his income, without getting specific as to the reasons why he would be unable to pay more than this amount.

The State responded by stating that the non-court ordered support obligation was not entitled to recognition by the court when setting support on the two cases currently before the court. The State also stated that support should be set according to the Tennessee Child Support Guidelines, and that Mr. Lewis had not proved extreme economic hardship as stated in the Guidelines.

On March 12, 1998, the trial court entered an order in each case, both of which provide the following:

The Court finds that all of Respondent's child support obligations, including the case in Madison County, TN and the non-court ordered support obligation, are entitled to equal treatment and the obligation for each should be the same. Therefore, the Court finds that one-half of Respondent's income shall be taken and divided equally among the 6 child support obligations. Based upon his paycheck stub for pay period ending 2-8-98, one-half of his income is $238.94, or $239.00 (rounded). Therefore, each child support obligation is set at $40.00 per week (39.83, rounded).

On April 9, 1998, the State appealed both cases.
The State presents to this Court the following issues on appeal:
1. Did the trial court err by considering Lewis's non-court ordered support obligation and Lewis's subsequently ordered support obligations?

2. Did the trial court err in deviating from the child support guidelines[2] based upon the proof presented at the February 27, 1998 hearing, with regards to Lewis's economic circumstances?

---

2. Tennessee's child support guidelines are set forth in the Official Compilation Rules & Regulations of the State of Tennessee in chapter 1240-2-4.

3. Did the trial court err in limiting the income that could be used to calculate Lewis's child support obligation to one-half of his net monthly income?

**Analysis**

Tennessee Code Annotated section 36-5-101(a)(1) establishes, "In cases involving child support, upon application of either party, the court shall decree an increase or decrease in such allowance when there is found to be a significant variance, as defined in the child support guidelines . . . , between the guidelines and the amount of support currently ordered . . . ."[3] Tenn. Code Ann. § 36-5-101(a)(1) (Supp. 1998). In the cases before this Court, however, no issues have been raised regarding whether the trial court could modify child support (i.e., whether a "significant variance" existed [4]). Instead, the only issues before this Court relate to the amount to which child support should be modified.

I. Calculation of Child Support Under the Guidelines

Tennessee Code Annotated sections 36-5-101(e)(1) and (2) require courts to apply Tennessee's child support guidelines as a rebuttable presumption in determining the amount of support of any minor child. Tenn. Code Ann. § 36-5-101(e)(1) (Supp. 1998). See also Tenn. Comp. R. & Regs. 1240-2-4-.02(7) (1994). Moreover, even if a court deviates from the guidelines, it must still make a written finding stating the amount of support that would have been ordered under the guidelines. Tenn. Code Ann. § 36-5-101(e)(1). Therefore, in the cases before this Court, the trial court was required to

---

3. Section 36-5-101(a)(1)'s mandate for modifying child support awards, which is quoted in the text above, is conditioned by further language in the statute that states, "unless the variance has resulted from a previously court-ordered deviation from the guidelines and the circumstances which caused the deviation have not changed." There exists nothing in the records before this Court, however, that establishes that the *prior* awards for child support in these cases were deviations from the guidelines. Therefore, the limitation to child support modifications that is established within section 36-5-101(a)(1) is inapplicable to the instant cases.

4. The guidelines define a "significant variance" as being "at least 15% if the current support is one hundred dollars ($100.00) or greater per month and at least fifteen dollars ($15.00) if the current support is less than $100.00 per month." Tenn. Comp. R. & Regs. 1240-2-4-.02(3) (1994). In the cases before this Court, the amount of support previously ordered for Kendall was $10.00, and the amount of support previously ordered for Victoria was $25.00. Because the amount of child support that was previously ordered in each of the cases before this Court was less than $100.00 per month, the plain language of section 36-5-101(a)(1) required the trial court to modify child support *if* the amounts that would be established under the guidelines varied from the amounts of support previously ordered by at least $15.00.

4

calculate the amount of support pursuant to the guidelines, regardless of whether it adhered to and ordered such an amount.

Under the guidelines, the amount established for child support is based on flat percentages of the obligor parent's (Lewis's) net income. Tenn. Comp. R. & Regs. 1240-2-4-.03(2). These flat percentages are determined by the number of children for whom support is being set. Id. The guidelines establish:

> (4) Net income is calculated by subtracting from gross income of the obligor FICA . . . , the amount of withholding tax deducted for a single wage earner claiming one withholding allowance . . . , and the amount of child support ordered pursuant to a previous order of child support for other children. . . . . Children of the obligor who are not included in a decree of child support shall not be considered for the purposes of reducing the obligor's net income or in calculating the guideline amount. In addition, these children should not be considered by the court as a reason for deviation unless they meet the requirements of Rule 1240-2-4-.04(4).
>
> (5) After determining the net income of the obligor, that amount is to be rounded up to the next dollar. That amount is then multiplied by the percentage below that corresponds to the number of children for whom support is being set in the instant case. The percentages are:

| No. of children | 1 | 2 | 3 | 4 | 5 or more |
|---|---|---|---|---|---|
| % of income | 21% | 32% | 41% | 46% | 50% |

> After this calculation is made, if there are no changes to be made pursuant to paragraph 1240-2-4-.04 . . . , then this is the amount of the child support award.

Tenn. Comp. R. & Regs. 1240-2-4-.03.

In the instant cases, calculation of net income required the trial court to consider Lewis's gross income, from which net income could then be derived. As a preliminary matter, we note that the trial court apparently did not consider gross income in any child support calculations. Instead, it apparently utilized the actual net amount that appeared on one of Lewis's paycheck stubs. While the net amount appearing on a paycheck stub *may*, in *some* instances, be substantially equivalent to the amount that would be calculated by subtracting FICA and the single wage earner with one allowance withholding tax from gross income, such a result cannot simply be inferred or presumed, because, among other reasons, taxpayers can claim additional withholding allowances or can have additional amounts withheld from their paycheck. Nothing in the records before this Court establishes that the net amount appearing on Lewis's paycheck stub in these cases was equal to gross

income minus FICA and the single wage earner with one allowance withholding tax. Therefore, the court's utilization of this amount was improper. The *only* evidence in the records before this Court establishing Lewis's gross income is set forth in the statements of the evidence, which establish that Lewis's gross income was $2,354 per month or $543.27 per week at the time of the original July 25, 1997 hearing. Therefore, calculation of child support under the guidelines must be based on these gross income amounts.

Calculation of net income for each of the instant cases next required subtracting from gross income FICA, the single wage earner with one allowance withholding tax, and any amounts of child support ordered pursuant to a previous order of child support for other children. Tenn. Comp. R. & Regs. 1240-2-4-.03(4). Subtracting FICA and the single wage earner with one allowance withholding tax from Lewis's gross income yields an amount of $1880.60 per month. Therefore, net income under the guidelines for each of these cases is equal to $1880.60 minus any child support amounts from previous orders of child support for other children. The evidence presented in the records before this Court establishes that there exists one order of child support in the amount of $54 per week ($234 per month) that was entered *prior* to the original orders of support for Kendall and/or Victoria, that there exist two other orders of child support that were entered subsequent to the original orders of support for Kendall and/or Victoria,[5] and that there exists a voluntarily assumed support obligation that has not been ordered by a court.

First, we note that Lewis's voluntarily assumed support obligation cannot be considered in calculating child support under the guidelines because such payments are not being made pursuant to a court order. See Tenn. Comp. R. & Regs. 1240-2-4-.03(4). In a prior case, this Court has stated the following regarding this issue:

> The guidelines are unequivocal. There are valid policy reasons for requiring that child support be paid pursuant to a court order before it can be deducted to calculate an obligor's net income. A prior court order [e]nsures the awarding court that the obligor is legally liable for the amount of child support claimed as a deduction.

---

5. Though nothing in the records on appeal establishes the dates upon which these two orders of support were entered, the fact that they were subsequent to the support orders for Kendall and Victoria is evident from the statement of evidence, which lists only the $54 per week obligation as being a *prior* order, and which refers to these two other orders separately.

Tower v. Tower, No. 02A01-9407-CV-00170, 1995 WL 650131 at *9 (Tenn. App. Nov. 3, 1995). See also Kirchner v. Pritchett, No. 01-A-01-9503-JV00092, 1995 WL 714279 at *5 (Tenn. App. Dec. 6, 1995).[6]

Second, we note that the two orders that were entered subsequent to the support orders for Kendall and/or Victoria cannot be deducted to calculate Lewis's net income because they are not "previous" orders of child support as contemplated by the child support guidelines. We recognize that the term "previous order" could be construed so as to utilize the time at which the calculation is being made (the time at which the matter is being considered or reconsidered by the court) as the point of reference for determining "previous" orders. This Court, however, has previously concluded, in Tennessee v. Matikke, No. 01A01-9702-CV-00090, 1997 WL 638273 (Tenn. App. Oct. 17, 1997), that the term "previous order" refers to an order entered prior to an *original* order of support in any given case. The term does not refer to an order entered subsequent to the original order of support, but prior to modification of support in a given case. In Matikke, we noted the following:

> [T]he Guidelines express a preference for children for whom a child support order is established first in time, regardless of whether the child was the product of a valid marriage or whether the child ever resided with the obligor. We recognize that this preference may work to the detriment of children for whom a subsequent order of child support is entered. We believe, however, that this is an argument more appropriately addressed to the General Assembly . . . .

Id. at *3. We adhere to Matikke's construction of the term "previous order" and, therefore, find that the two orders that were entered subsequent to the support orders for Kendall and/or Victoria cannot be deducted to calculate Lewis's net income. Moreover, even *if* these orders had been "previous" orders, we would be unable to deduct any amounts to reduce Lewis's net income because there exists a complete failure of proof within the

---

6. The eastern section of this Court once held, in Adams v. Reed, 874 S.W.2d 61 (Tenn. App. 1993), that voluntary child support *should* be considered in setting child support. In Kirchner v. Pritchett, however, the middle section of this Court subsequently observed in a footnote the following:

> The Department of Human Services amended the guidelines after the Adams v. Reed decision. Rather than giving parents credit for voluntary child support payments, the amended guidelines specifically state that voluntary child support cannot be deducted from gross income and cannot be used as a basis for deviating from the guidelines unless the payments involve extreme economic hardship.

Kirchner, 1995 WL 714279 at *6 n.5.

record regarding the amounts of the subsequent court-ordered support obligations.

The only evidence in the records before this Court that establishes an amount from a "previous order" of child support for another child is the order of child support in the amount of $54 per week ($234 per month). This amount must be deducted from Lewis's gross income in order to calculate his net income. As explained earlier, subtracting FICA and the single wage earner with one allowance withholding tax from Lewis's gross income yields an amount of $1880.60 per month. The additional deduction of $234 per month from Lewis's gross income yields an amount of $1,646.60 per month.

Because the two cases before this Court involve children from separate cases, and because the original order of child support for Kendall was entered earlier in time than the original order of child support for Victoria, child support for each child must be calculated separately. Lewis's net income for calculating the child support for Kendall is the $1,646.60 amount set forth above. As the guidelines require, this amount must be rounded up to the next dollar ($1,647), and then child support is based upon 21% of this amount. Accordingly, the guidelines establish child support for Kendall at $345.87 per month ($79.82 per week).[7] Lewis's net income for calculating the child support for Victoria is the $1,646.60 amount set forth above *minus* the amount of child support ordered pursuant to Kendall's previous order of child support. This amount was $10 per week, or $43.33 per month, which reduces Lewis's net income to $1603.27 for the purpose of calculating child support for Victoria. Under the guidelines, such a net income would yield a child support obligation of $336.84 per month ($77.73 per week).

## II. Deviation from the Child Support Guidelines

As stated earlier, Tennessee Code Annotated sections 36-5-101(e)(1) and (2) require courts to apply Tennessee's child support guidelines as a rebuttable presumption

---

7. As reflected in rule 1240-2-4-.03(5), which was quoted earlier in the text above, further changes may be made pursuant to rule 1240-2-4-.04. Aside from 1240-2-4-.04(4), which pertains to deviation based on extreme economic hardship, however, no such issues have been raised before this Court.

8

in determining the amount of support of any minor child. Tenn. Code Ann. § 36-5-101(e)(1). See also Tenn. Comp. R. & Regs. 1240-2-4-.02(7). These guidelines "are designed to make awards more equitable by providing a standardized method of computation." Jones v. Jones, 930 S.W.2d 541, 543 (Tenn. 1996).

> Although § 36-5-101(e)(1) and the [child support guidelines] clearly embody the legislature's intention that the guidelines govern the amount of child support awarded, the fact that the presumption is rebuttable implies that the trial courts have limited discretion to deviate from the guidelines.
>
> . . . .
>
> While § 36-5-101(e)(1) does authorize deviation in order to ensure equity between the parties, and while downward deviation is clearly not prohibited, the trial court's authority to do so must be considered in light of the provisions dealing with such deviation--Rule 1240-2-4-.04(2) and (4). Although not exclusive, those subsections provide for downward deviation in three instances . . . . [Essentially], the guidelines expressly provide for downward deviation where the obligee has utterly ceased to care for the child(ren);[8] where the obligee clearly has a lower level of child care expense than that assumed in the guidelines;[9] and where the obligor is saddled with an "extreme economic hardship."

Jones, 930 S.W.2d at 544. In the instant cases, the first two instances quoted above (where the obligee has ceased to care for the child(ren) and where the obligee has a lower level of child care expense) are inapplicable, as these issues have not been raised before this Court. Moreover, there exists no proof in the records that would support any such findings. Therefore, the issue before this Court is whether the trial court erred in deviating from the guidelines based upon "extreme economic hardship."

First, we note that the trial court was required to make a written finding that the application of the guidelines would be unjust or inappropriate if it found that the evidence was sufficient to rebut the presumption that the guidelines should apply. See Tenn. Code Ann. § 36-5-101(e)(1). See also Tenn. Comp. R. & Regs. 1240-2-4-.02(7). Though the trial court did state its reason for deviation from the guidelines by stating that all of Lewis's child support obligations are entitled to equal treatment, the trial court did not make any written finding that the application of the guidelines would be unjust or inappropriate.

---

8. Rule 1240-2-4-.04(2)(a) establishes that deviation from the guidelines may be appropriate "In cases where the Department of Human Services has taken custody of the child(ren) pursuant to a neglect, dependant, or abuse action and where the parent(s) is/are making reasonable efforts to secure the return of the child(ren) to the family." See Tenn. Comp. R. & Regs. 1240-2-4-.04(2) (1997).

9. Rule 1240-2-4-.04(2)(a) establishes that deviation from the guidelines may be appropriate "In cases where physical custody of the child(ren) is more equally divided between the parties than occurs in a situation where one party has an average amount of overnight visitation . . . ." Tenn. Comp. R. & Regs. 1240-2-4-.04(2).

Accordingly, its deviation from the guidelines was improper. See Tenn. Code Ann. § 36-5-101(e)(1). See also Tenn. Comp. R. & Regs. 1240-2-4-.02(7).

Furthermore, the reason stated for the trial court's deviation was insufficient to support deviation from the guidelines. As we noted in Tennessee v. Matikke, which was discussed above, "the Guidelines express a preference for children for whom a child support order is established first in time." An obligor's support obligations relating to various children are only entitled to "equal" treatment under Tennessee law if those various children are all considered within the same case. See Tenn. Comp. R. & Regs. 1240-2-4-.03(5).

Lastly, we note that there exists no proof within the records sufficient to support a finding of extreme economic hardship. While it was established that Lewis was under a total of five orders of child support, and that he had voluntarily assumed one additional support obligation, no proof exists within the records that establishes any amounts of any financial obligations, aside from the one prior $54 per week order of child support. The only thing found in the records that relates to a finding of extreme economic hardship is Lewis's own conclusion "that he was unable to pay more than one-half of his income" for his various child support obligations. Even assuming this conclusion was correct, we would be unable to calculate the actual total of Lewis's various child support obligations due to a failure of proof. Accordingly, deviation from the guidelines in the instant cases was improper.

### III. Lewis's Income

The State's final issue is whether the trial court erred in limiting the income that could be used to calculate Lewis's child support obligation to one-half of his net monthly income. Based upon our analysis and resolution of the above two issues, however, we find it unnecessary to further address this issue, and, therefore, pretermit further analysis of the same.

10

**Conclusion**

Based upon the foregoing, the trial court's modification of child support to the amount of $40.00 per week for both Kendall and Victoria is hereby reversed, and such support is hereby set at $79.82 per week for Kendall and at $77.73 per week for Victoria. Costs of these consolidated appeals are taxed to Lewis, for which execution may issue if necessary.

_____
HIGHERS, J.

CONCUR:


_____
FARMER, J.


_____
LILLARD, J.