# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
July 11, 2001 Session

## DEE ANN CURTIS GALLAHER v. CURTIS J. ELAM

**Appeal from the Juvenile Court for Knox County**
**No. B-3443      Carey Garrett, Judge**

**FILED JANUARY 29, 2002**

**No. E2000-02719-COA-R3-CV**

---

This is an appeal by the State of Tennessee from a determination of the Juvenile Court of Knox County which held Tenn. Comp. R & Regs. 1240-2-4-.03(4), issued pursuant to T.C.A. 36-5-101, unconstitutional as violative of Section 1 of the 14th Amendment to the Constitution of the United States. Dee Ann Curtis Gallaher also appeals, contending that the Trial Court was in error in setting child support. We affirm the Trial Court in its finding the Regulation in question unconstitutional and vacate the judgment as to child support.

**Tenn.R.App.P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed in Part; Vacated in Part; and Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which D. MICHAEL SWINEY, J., joined. HERSCHEL P. FRANKS, J., filed a dissenting opinion.

Wayne Decatur Wykoff, Knoxville, Tennessee, for the Appellant, Dee Ann Curtis Gallaher

L. Caesar Stair, III, Knoxville, Tennessee, for the Appellee, Curtis J. Elam

Paul G. Summers, Attorney General & Reporter, and Stuart F. Wilson-Patton, Senior Counsel, Office of the Attorney General, Nashville, Tennessee, for the Intervening Petitioner, State of Tennessee

## OPINION

The principal issue raised in this appeal is whether the following rule and regulation promulgated by the Department of Human Services, pursuant to T.C.A. 36-5-101, violates the Equal Protection Provision contained in Section 1 of Amendment 14 to the United States Constitution:

Children of the obligor who are not included in a decree of child support shall not be considered for the purposes of reducing the obligor's net income or in calculating the guideline amount. Tenn. Comp. R & Regs. 1240-2-4-.03(4).

Because the facts are undisputed and only a question of law is presented for our review of the Trial Court's finding the foregoing rule and regulation unconstitutional is *de novo* without a presumption of correctness. Campbell v. Florida Steel Corp., 919 S.W.2d 26 (Tenn. 1996).

Jacob Dylan Gallaher was born to Dee Ann Curtis Gallaher on August 25, 1993. Blood test results show a 99.76 percent probability that Curtis J. Elam was the father of Jacob. An agreed order was entered on September 27, 1994, declaring him to be such and establishing child support at $750 per month.

At the time of conception of Jacob, Dr. Elam was married and the father of three children. At a hearing before the Referee in which Ms. Gallaher was seeking additional child support, the Referee increased the child support to $2100 per month, and ordered Dr. Elam to pay $200 per month as additional support because the father exercised no visitation privileges.

Dr. Elam appeals the Referee's decision to the Juvenile Court. The Juvenile Judge entered an order holding the guidelines in general violated the Doctrine of Separation of Powers and the specific guideline in question violated the Due Process and Equal Protection Clauses of the State and Federal Constitutions. He thereupon awarded child support in the amount of $1600, the amount Ms. Gallaher testified was necessary for Jacob's support, plus an additional $200 because the father did not exercise his visitation rights. Nash v. Mulle, 846 S.W.2d 803 (Tenn. 1993). Finally, he ordered $15,000 to be placed in a trust fund by Dr. Elam for the benefit of Jacob.

Both Ms. Gallaher and the State of Tennessee appeal the Trial Court's decision but only the State addresses the constitutional issue.

The State points out that there is a strong presumption that legislative acts and those which include, under the holding of our courts, rules and regulations promulgated by various departments of government are constitutional, and that every doubt should be resolved in favor thereof. It also cites cases which hold that the Equal Protection Clause guarantees all persons similarly situated will be treated alike, that in this case we should not indulge in a strict scrutiny, but rather a "reduced scrutiny or rational basis test," and that statutory classifications will be upheld if "some reasonable basis can be found for the classification...or any state of facts may reasonably be conceived to justify it." Riggs v. Burson, 941 S.W.2d 44 (Tenn.1997).

We agree with the foregoing statement of law.

We have found no Tennessee case which addresses the specific issue raised, but in one case, State ex rel. v. Poteet, an unreported opinion of this Court filed in Nashville on March 17, 1999, where the facts were the reverse in that the putative father of a child born out of wedlock was ordered

to pay child support without considering the fact that he had three additional children by a subsequent marriage.

This Court affirmed the action of the Trial Court in awarding the first-born child 21 percent under the guidelines and did not consider the other three children subsequently born. In that case no constitutional issue was raised, but in a concurring opinion Judge Koch strongly suggests that had it been raised the regulation in question could very well have been held unconstitutional.

The language Judge Koch used is instructive:

> There has been surprising little judicial consideration of the constitutional legitimacy of the "first families first" bias inherent in child support guidelines like the ones currently in effect in Tennessee. Only one court, in a very cursory fashion, has held that the guidelines can withstand rational basis equal protection scrutiny. See Feltman v. Feltman, 434 N.W.2d 590, 592 (S.D. 1989). However, this holding prompted a dissenting justice to observe that the classification between children of a former marriage and children of a current marriage is "unconstitutional because it discriminates against children of a 'noncustodial' parent's second family, denying them equal protection under the law. This statute classifies children by accident of their birth, a classification that has no rational relationship to any legitimate governmental interest." Feltman v. Feltman, 434 N.W.2d at 593-94 (Henderson. J., dissenting). Others have raised similar concerns, not only about the reasonableness of the "first families first" bias but also about its effects on other fundamental rights and interests of the noncustodial parent and his or her spouse. See Rebecca B. Garland, Second Children Second Best? Equal Protection for Successive Families Under State Child Support Guidelines. 18 Hastings Const. L.Q. 881 (1991).

> This issue involves a child's right to receive support from a common biological parent. All children of the same parent have the right to share fairly with their siblings in their common parent's resources. When other states have adopted child support guidelines that accommodate this right, the Department cannot place administrative convenience ahead of fundamental fairness. The Department cannot simply shrug its bureaucratic shoulders and announce that it has done the best it can.

> Tennessee's child support guidelines contain the standards by which they should be measured. Their stated purpose is "to make child support awards more equitable by ensuring more consistent treatment of persons in similar circumstances." Tenn. Comp. R. & Regs. r. 1240-2-4-.02(2)(b). It should be apparent that the circumstances of children with a common biological parent are similar. Accordingly, when this issue is properly raised in a future case, the courts should put the guidelines' "first families first" bias to the test and should carefully consider whether it passes muster under the state and federal constitutions.

As already noted, the Juvenile Judge found that the provision violated the Equal Protection Clause of the United States Constitution, as well as the Due Process Clause and the Doctrine of Separation of Powers provision of the Tennessee Constitution, which results in this appeal, wherein the constitutional issues are addressed by the office of the Attorney General of this State.

The Juvenile Court, in ruling on the Equal Protection feature of this appeal, relied upon two dissenting opinions. One from the State of South Dakota, and the other from the State of Florida. In both of those cases, the majority found that the applicable statute should be viewed in the light of rational standard basis, rather than a suspect classification or a fundamental right. In both cases it was the last-born child who was given short shrift.

In Feltman v. Feltman, 434 N.W.2d 590, 593 (S.D. 1989), Justice Henderson dissented from the majority opinion upholding the South Dakota Statute, and used the following language:

> Are children of a second marriage "children of a lesser god"?
>
> Are children of a second marriage lesser children under the United States Constitution?
>
> Are children of a second marriage any less hungry or naked without the support of their father?
>
> Should we weep for children of a second marriage at their birth, rather than at their death?
>
> This decision is reduced to an old adage, "First come, first served." In my judgment, all of God's children, born of the first or second marriage, must be afforded the same consideration under law.
>
> We have, before us, yet another case where the "guidelines chart" is literally supreme. It is further noted, by this minority writer, that the majority suggests, perhaps inferentially, that the priority of the child support for the first marriage results in "imperfect results." Indeed, the law is not, perfect, but as we write it, we should strive for its perfection.
>
> SDCL 25-7-7 is unconstitutional because it discriminates against children of a "non-custodial" parent's second family, denying them equal protection under the law. This statute classifies children by accident of time of birth; a classification that has no rational relationship to any legitimate governmental interest. Conceptually, this discrimination is as irrational, and hence unconstitutional, as discrimination against illegitimate children.

In Pohlmann v. Pohlmann, 703 So.2d 1121, 1128 (Fla.App. 5 Dist. 1997) Justice Harris also dissented from the majority opinion upholding the Florida Statute in an equally vigorous manner:

The dissent in <u>Feltman</u> asks the question: "Are the children of a second marriage children of a lesser god"? It also asks whether such children are lesser under the United States Constitution; are they less hungry or less naked without their parent's support" It finally asks whether we should weep for the children of a second marriage when they are born instead of when they die? The dissent in <u>Feltman's</u> response to these questions is that *all* children of the parent should be considered equal. The dissent asserts, as do I, that the mere fact that discrimination is in the guidelines or in the statute does not make it right, nor does it make it constitutional. Nor does the fact that it is designed by some committee make it so. (Emphasis in original.)

Even though it is a discomforting topic, perhaps we should consider the fairness issue. Suppose it were the mother who was required to pay support to the children of her first marriage. And assume that upon remarriage she elects to have additional children. By doing so, she has voluntarily become unemployed rendering further child support problematic. Assume further that she elects to become a stay-at-home mother to raise her new children. The court would not, could not, and should not intervene. And there is a good reason. The children of the first marriage simply have no more veto power over the noncustodial parent's future reproductive decisions than a child of an intact marriage has over his parents' decision to have additional children. And such children of the first marriage, at least in my view, have no vested right to a higher standard of living based on an allocation of a greater percentage of their parent's income than do the children of a second marriage.

Because the state has no business discriminating between children based solely on the fact of a divorce, there is no legitimate state purposes in requiring a parent to allocate his or her income more to one child than another. The state's attempt to do so is state-mandated, court-enforced child abuse; it is not only cruel discrimination, it is unconstitutional.

We find the dissenting opinions more persuasive than the persuasive authority of the majority opinions, and adopt the reasoning thereof in the disposition of this appeal.

As heretofore noted, the Trial Court also found the regulation in question violates the constitutional provision as to Due Process and the Doctrine of Separation of Powers. However, in light of the disposition of the Equal Protection issue, we do not deem it necessary to make a judgment as to the other grounds relied upon by the Juvenile Judge.

Having determined that the rule and regulation hereinbefore set out is constitutionally infirm, we recognize that an appeal has been filed by the mother of the child in question taking exception to the amount of support decreed by the Juvenile Judge.

It appears that Dr. Elam's income for the year 1999, the last year figures were available prior to the judgment below, is somewhat of an aberration, in that the proof shows the doctor had considerably more income in the two preceding years. We believe it is appropriate to remand the case for the Juvenile Judge to hear additional proof as to Dr. Elam's net income as defined by the guidelines and then make the following awards: (1) award for child support; (2) award for any arrearage which may be found; (3) if he finds it appropriate, require an additional payment for the fact that the child's custody is exclusively with the mother, and (4) if he finds it appropriate, establish a trust fund for educational purposes.

As to how the child support award should be calculated, it appears there are perhaps two methods. Number one is to determine an award under the guidelines for four children and make an award of one-fourth of that amount to Jacob.[1] The other method would be to determine the appropriate amount under the guidelines for three children, deduct that amount from Dr. Elam's net monthly income, and make an award to Jacob applying the guideline percent for one child.

In view of the fact that the first-born three children are living in one household rather than separate households, where household expenses would in large measure be the same for one child as for three, it would appear the latter method would be preferable under the facts of this case.

For the foregoing reasons the judgment of the Juvenile Court is affirmed in part, vacated in part, and the cause remanded for proceedings not inconsistent with this opinion. Costs of appeal are adjudged one-half against the State and one-half against Dr. Elam.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE

---

[1] This was the method employed by this Court in the case of Adams v. Reed, 874 S.W.2d 61 (Tenn. Ct. App. 1993), which was decided prior to the promulgation of the regulation here under siege.